# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| VICTORIA CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:19-cv-00501 |
| | ) | |
| DONNA DAVENPORT, et seq., | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| Defendants | ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court are Plaintiff's Motion for Preliminary Injunction Pursuant to Rule 65(a) (Doc. No. 4); Defendants Gray and Wright's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 40); and Defendant Donna Davenport's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 45). For the reasons set forth below, Plaintiff's Motion for Preliminary Injunction Pursuant to Rule 65(a) (Doc. No. 4) is **DENIED**, and Defendants' Motions to Dismiss (Doc. Nos. 40, 45) are **GRANTED**. Accordingly, this action is **DISMISSED**.

Also pending before the Court is Defendant Donna Davenport's Motion for Leave to File Juvenile Court Records Under Seal (Doc. No. 48). Through the Motion, Defendant requests permission to file certain pleadings from the underlying juvenile court proceeding under seal in this case. The records have not been filed as yet. Because the Court finds the records unnecessary to resolution of this case, the Motion is **DENIED**, as moot.

### II. Factual and Procedural Background

In her Amended Complaint, Plaintiff Victoria Cunningham, individually and as next friend and mother of A.C., alleges Defendants Donna Davenport, a Rutherford County Juvenile Court

Judge, as well as two employees of the Tennessee Department of Children's Services ("DCS"), Tameika Gray and Matthew Wright, have violated her due process rights and her parental rights under the Fourteenth Amendment; her right to be free from an unreasonable search and seizure under the Fourth Amendment; and her parental rights under the Ninth Amendment. (Doc. No. 38). Plaintiff's claims are based on the issuance of an "*Ex Parte* Order" (Doc. No. 38-4), signed by Defendant Davenport, which provides as follows:

> Based upon the facts stated in the verified application filed in this cause, the Court finds:
>
> 1. This Court has jurisdiction over this action and the parties, and venue is appropriate in this County.
>
> 2. Tenn. Code Ann. §§ 37-5-512(b) and 37-1-406(e) give the Tennessee Department of Children's Services ('DCS') the authority and responsibility to investigate reports of harm to the children of this state.
>
> 3. DCS has received a report of harm concerning the subject child, but has been unable to complete its investigation due to the actions of the Mother, Victoria Cunningham, and the Maternal Grandmother, Ms. Connie Reguli.[1]
>
> IT IS, THEREFORE, ORDERED:
>
> 1. That the Mother, Ms. Victoria Cunningham, and the Maternal Grandmother, Ms. Connie Reguli, the parent and physical custodian, respectively, of the subject child, shall allow entrance to the home, school, or place where the child is located by duly authorized representatives of DCS, for the purpose of an examination of the child, the child's home and/or to complete its investigation. Further that the Mother and Ms. Reguli will allow DCS to conduct a face to face interview with the Child outside of their presence and outside the presence of other 3rd parties; further the Mother and Ms. Reguli will allow the Child to be forensically interviewed by representatives of the CAC (Child Advocacy Center).
>
> 2. That, if necessary to complete the investigation required by Tenn. Code Ann. §§ 37-5-512(b) and 37-1-406(e), DCS may take the subject child into its temporary physical custody for the purpose of observing and interviewing the child and to

---

[1] Ms. Reguli is also acting as counsel for Plaintiff in this action. While the Court's ruling dismisses this action, the Court has serious concerns about Ms. Reguli's roles as attorney, parent, grandparent, as well as fact witness generally. *See* Tenn. R. Prof. Cond. 2.1, 3.7.

obtain physical, psychological, or psychiatric examinations by qualified persons; that DCS has the authority to place the child in any suitable health care facility for the purpose of conducting said examinations; and that DCS has the authority to consent to any ordinary procedures necessary to the examinations. The interviews and examinations authorized herein shall be conducted prior to any other interviews or examinations arranged at the direction of the child's parent or physical custodian. The Court finding that this provision is imperative to preserve the integrity of the DCS and required law enforcement investigations and to protect the child from irreparable harm.

3. That a law enforcement official with jurisdiction shall assist DCS as necessary to complete the investigation authorized by this order.

\* \* \*

This matter will be reviewed on Friday June 14, 2019, at 10:00 A.M.[2]

(Doc. No. 38-4). The *Ex Parte* Order was allegedly issued in response to a Verified Application for the requested relief, drafted by Defendants Wright and Gray. (Doc. No. 38-6).

Plaintiff's Amended Complaint seeks injunctive relief prohibiting Defendants from "the exercise of the mandates set forth in the *Ex Parte* Order, and more specifically from enjoining or attempting to enjoin the Plaintiff/Mother from seeking professional psychological services; from being present during any interview with the child; from taking temporary custody of the child; and from any further examination or interview with the child until Plaintiff/Mother has presented the child to her psychologist of her choice." (Doc. No. 38, at 18). Plaintiff also seeks damages from Defendants Gray and Wright. (*Id.*)

In her Response (Doc. Nos. 56, 61) to the pending motions, Plaintiff indicates that two additional orders have been entered in the state case since this action was filed. The orders are

---

[2] Omitted paragraphs 4-6 relate to the collection and maintenance of records.

3

attached as exhibits to her Response. The first order (Doc. No. 61-1), entered on September 3, 2019, by the Honorable Darrell Scarlett, a Rutherford Circuit Court Judge "sitting by special appointment," includes the following findings: (1) the mother of A.C. lives in Williamson County and the father lives in Rutherford County; (2) neither the mother nor the grandmother are the alleged perpetrators; (3) the mother presented the child to the DCS investigator on June 11, 2019, and was told she could not interview the child outside the presence of the grandmother; (4) the State has withdrawn reliance on Tennessee Code Annotated § 37-5-512(b); (5) the court recognizes a parent's constitutional right to raise their child as they see fit absent a showing of substantial harm to the child, and the constitutional right to privacy in parenting a child; (6) the language of Tennessee Code Annotated § 37-1-406(e) authorizes DCS to have the child interviewed without any representative of either parent being present, and the mother has the right to take the child to a counselor of her choice after the interview; (7) personal and subject matter jurisdiction is vested in the court because jurisdiction is based on where the act occurred or where the child resides (*i.e.,* where either parent resides or is found); (8) Section 37-1-406 is constitutional as applied and as written; and (9) Rutherford County Juvenile Court had personal and subject matter jurisdiction when it entered the *Ex Parte* Order. (Doc. No. 61-1). Judge Scarlett stayed enforcement of the order for 10 days to allow the mother to file an appeal. (*Id.*)

On September 27, 2019, Judge Scarlett entered a second order (Doc. No. 61-2), as a result of a request to alter or amend judgment filed by the State, which removed the requirement that the DCS interview occur before the mother was allowed to take the child to a counselor. The order also includes a finding that neither the mother nor the grandmother had done anything to pose a risk of substantial harm to the child. (*Id.*) According to Plaintiff, the second order is currently on appeal. (Doc. No. 61, at 7).

4

Plaintiff's Response to the pending motions also states that she "does not oppose staying any request for injunctive relief" pending the final outcome of the state court proceeding. (Doc. No. 61, at 29). Plaintiff concedes "[t]he request for the specific injunctive relief requested by the Plaintiff is arguably moot," in light of the most recent orders entered by the state court. (*Id.*, at 29 n. 13). Given these concessions, the Court concludes that Plaintiff's Motion for Preliminary Injunction Pursuant to Rule 65(a) (Doc. No. 4) is without merit, as Plaintiff cannot establish she will suffer immediate, irreparable harm absent the injunction. *See, e.g., D.T. v. Sumner Cty. Sch.,* 942 F.3d 324, 326 (6th Cir. 2019); *Doe v. Univ. of Cincinnati,* 872 F.3d 393, 399 (6th Cir. 2017).

Plaintiff's Response also states that she does not oppose dismissal of her "official capacity" claims against Defendant Davenport. (Doc. No. 61, at 27). Accordingly, Plaintiff's claims against Defendant Davenport in her official capacity are dismissed.

### III. Analysis

#### A. The Standards Governing Motions to Dismiss

In considering a motion to dismiss, a court must determine whether the plaintiff has sufficiently alleged "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Well-pleaded factual allegations are accepted as true and are construed in the light most favorable to the nonmoving party. 129 U.S. at 1950; *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017).

As a general rule, the court is not to consider matters outside of the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See, e.g., Seaton v. TripAdvisor LLC,* 728 F.3d 592 (6th Cir.

2013); *J.P. Silverton Industries L.P. v. Sohm*, 243 Fed. Appx 82, 86-87 (6th Cir. 2007). Before considering such matters, Rule 12(d) provides that the court must first convert the motion to dismiss to one for summary judgment. The Sixth Circuit has held, however, that a court need not convert the motion under Rule 12(d) if it considers only "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). More specifically, courts may take judicial notice of proceedings in other courts of record. *Lynch v. Leis,* 382 F.3d 642, 647 n. 5 (6th Cir. 2004); *Lyons v. Stovall,* 188 F.3d 327, 332 n. 3 (6th Cir. 1999); *see also Joseph v. Bach & Wasserman, LLC,* 487 Fed. Appx 173, 178 n. 2 (5th Cir. 2012) (holding that, in reviewing a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of matters of public record to include a pleading filed with a state district court).

Based on this authority, the Court may consider the orders of the state court filed by Plaintiff without converting the motions to dismiss to motions for summary judgment.

**B. Subject Matter Jurisdiction**

Defendants argue the Court lacks subject matter jurisdiction in this case based on the domestic relations exception to federal jurisdiction, and the *Rooker-Feldman* doctrine.

The Supreme Court has held that federal courts generally have no jurisdiction over cases involving domestic relations matters. *Ankenbrandt v. Richards,* 504 U.S. 690, 112 S. Ct. 2206, 119 L.Ed.2d 468 (1992). "Although this domestic relations exception to federal jurisdiction does not apply to a civil action that merely has domestic relations overtones, . . . federal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues." *Danforth v. Celebrezze,* 76 Fed. Appx 615, 616 (6th Cir. 2003). In determining

whether the domestic relations exception applies, courts are to focus on the remedy the plaintiff seeks: "Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?" *Chevalier v. Estate of Barnhart,* 803 F.3d 789, 797 (6th Cir. 2015). If the plaintiff "requests that a federal court determine who should have care for and control a child, then that request is outside the jurisdiction of the federal courts." *Id.* This remedy "'entail[s] continuing judicial supervision of a volatile family situation,' and federal courts are poorly equipped to handle that task." *Id.* (quoting *Lloyd v. Loeffler,* 694 F.2d 489, 492 (7th Cir. 1982)); *see also Alexander v. Rosen,* 804 F.3d 1203, 1205-06 (6th Cir. 2015).

The Court is not persuaded that the domestic relations exception applies here. This case does not involve divorce or alimony, and does not, strictly speaking, involve custody of A.C. In addition, Plaintiff no longer seeks injunctive relief in connection with the state court's orders. Given the Sixth Circuit's admonition that the domestic relations exception applies only to a "narrow range" of cases, *Chevalier,* 803 F.3d at 795, the Court concludes the domestic relations exception does not undermine subject matter jurisdiction in this case.

Defendants alternatively argue the Court lacks subject matter jurisdiction based on the *Rooker-Feldman* doctrine. The doctrine is based on two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 1311-12, 75 L.Ed.2d 206 (1983), and has been described by the Sixth Circuit as "a combination of the abstention and res judicata doctrines." *United States v. Owens,* 54 F.3d 271, 274 (6th Cir. 1995). "*Rooker-Feldman* applies 'when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law.'" *Reguli v. Guffee,* 371 Fed. Appx. 590, 595 (6th Cir. 2010) (quoting *McCormick v. Braverman,* 451 F.3d 382, 395 (6th Cir. 2006)). It "stands for the proposition that a

7

federal district court may not hear an appeal of a case already litigated in state court." *Owens,* 54 F.3d at 274. A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States. *Id.*

In order for the doctrine to apply, the issue before the federal court must be "inextricably intertwined" with the claim asserted in the state court proceeding, and the federal action involves a specific grievance that a law was invalidly applied in a particular case, rather than a "general challenge" to the constitutionality of a state law applied in the state action. *Catz v. Chalker,* 142 F.3d 279, 293-95 (6th Cir. 1998). A federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. *Id.*

The key inquiry in determining whether *Rooker-Feldman* applies is determining the source of the alleged injury. *Id.* "'If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.'" *Id.* (quoting *McCormick,* 451 F.3d at 393). "'If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.'" *Id.*

In contending the doctrine applies here, Defendants rely on the Sixth Circuit's decision in *Reguli v. Guffee*, *supra.* The plaintiff in *Reguli*[3] brought a Section 1983 suit, on behalf of herself and her daughter, arising out of her interactions with the Williamson County, Tennessee juvenile court system. 371 Fed. Appx. at 592-93. The court examined the plaintiff's constitutional claims,

---

[3] The plaintiff in *Reguli* is Connie Reguli, who is acting as counsel for Plaintiff in this case, and is also Plaintiff's mother, and A.C.'s grandmother.

8

and determined that most of them were essentially challenges to specific orders issued by the juvenile court:

> Specifically, Count I alleges a violation of Plaintiffs' constitutional right of liberty and privacy based on five acts taken by Guffee that stemmed directly from her orders. Plaintiffs also allege that Guffee and other defendants 'unlawfully conspired and orchestrated the ex parte deprivation of right as against the child,' but the only action alleged was again an order from Guffee. Plaintiffs' other allegations of constitutional violations against Guffee also stem from court orders. For instance, in ¶ 77 of the amended complaint, Plaintiffs challenge the body attachment issued by Guffee. In ¶ 80, Plaintiffs challenge a settlement negotiated by the juvenile court that had the force of a court order. In ¶ 81, Plaintiffs challenge the incarceration of YKR. To the extent that Plaintiffs include the other Williamson County defendants acting in concert with Guffee, the *Rooker–Feldman* doctrine should apply with equal force. The injury alleged by Plaintiffs in all of these allegations is a direct result of the judicial order and fails to assert an 'independent claim' that would bring the case outside the ambit of *Rooker–Feldman*.

371 Fed. Appx. at 595-96 (footnotes omitted). The only independent claims not included in the ambit of *Rooker-Feldman,* the court concluded, were those based on actions taken during the investigation by youth services officers and DCS investigators, and those based on the actions of the director of an entity providing counseling services to the plaintiff's daughter. *Id.,* at 597-602. Those claims were dismissed on other grounds. *Id.*

As in *Reguli,* the main source of the injury Plaintiff identifies in the Amended Complaint is based on the issuance of the *Ex Parte* Order. Plaintiff claims her parental rights, due process rights, and her right to be free from an unreasonable search and seizure were all violated by the terms of the *Ex Parte* Order. Thus, the *Rooker-Feldman* doctrine applies to those claims. The doctrine does not apply, however, to Plaintiff's claim that Defendants Wright and Gray made false

9

statements in the Verified Application (Doc. No. 38-6) they filed requesting the *Ex Parte* Order. (Doc. No. 38, at 11-13). That conduct is independent of the *Ex Parte* Order.[4]

Plaintiff seeks to distinguish *Reguli* by arguing that Defendant Davenport acted without subject matter jurisdiction, an allegation she contends was not made in *Reguli*. Plaintiff is incorrect. The *Reguli* Court specifically considered and rejected the plaintiff's argument that *Rooker-Feldman* did not apply because the juvenile court referee was without jurisdiction to issue the orders in question:

> We need not decide whether the juvenile court definitively had jurisdiction to issue the body attachment. Plaintiffs' underlying claim is that the juvenile court order violated their constitutional rights. This Court cannot consider 'whether a state court judgment itself was unconstitutional.' *McCormick,* 451 F.3d at 395. Even if issued without jurisdiction, the order was still issued by a state court, and *Rooker–Feldman* bars a federal court from reviewing the constitutionality of that order.

371 Fed. Appx. at 597 (footnotes omitted). Plaintiff's argument that the state court was without jurisdiction does not undermine application of *Rooker-Feldman* to Plaintiff's claims based on the *Ex Parte* Order.[5]

---

[4] The Amended Complaint is not a model of clarity, and thus, the Court has struggled to identify the conduct underlying each of the claims. Plaintiff cites 42 U.S.C. § 1985 in the introduction to her Amended Complaint, but the factual allegations regarding any alleged conspiracy appear to focus on the issuance of the *Ex Parte* Order. As such, the conspiracy claim would be barred by *Rooker Feldman. Reguli,* 371 Fed. Appx. at 596. To the extent Plaintiff sought to allege the defendants engaged in a conspiracy independent of the *Ex Parte* Order, that conduct is not described in the factual allegations, and therefore, such a claim is dismissed as inadequately pled. Fed. R. Civ. P. 8(a).

[5] Plaintiff 's citation of *Twin City Fire Ins. Co. v. Adkins,* 400 F.3d 293 (6th Cir. 2005) also fails to advance her argument that such an exception to *Rooker-Feldman* exists. The plaintiffs in *Twin City Fire* argued that a state court decision governing their claim for insurance coverage was void *ab initio*, and therefore, did not apply to bar recovery in their breach of contract case brought in federal court based on diversity jurisdiction. The district court dismissed the action based on the state court decision, refusing to consider the plaintiffs' argument that the decision had no precedential value because it was void *ab initio*. 400 F.3d at 297-98. The appeals court determined that the district court should have considered the plaintiffs' argument regarding the precedential value of the state court decision, but found the error to be harmless because the state court decision was valid. *Id.,* at 300-01. Unlike this case, the plaintiffs in *Twin City Fire* sought to recover for breach of an insurance contract, not for the issuance of a specific state court order.

## C. Judicial Immunity

Defendants argue that even if the Court has subject matter jurisdiction, Plaintiff's claims are subject to dismissal because they are immune from suit. Defendant Davenport contends absolute judicial immunity bars Plaintiff's claims against her.

Judges have traditionally been held to be absolutely immune from civil suits for money damages. *Ireland v. Tunis,* 113 F.3d 1435, 1440 (6th Cir. 1997). There are only two narrow exceptions to the application of judicial immunity:

> First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles v. Waco,* 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). Whether an action is taken in the defendant's judicial capacity depends on the "'nature' and 'function' of the act, not the 'act itself.'" *Id.*, at 13. As for the jurisdictional inquiry, the Supreme Court has explained that "the scope of the judge's jurisdiction must be construed broadly." *Stump v. Sparkman,* 435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" 435 U.S. at 356-57 (footnote omitted).

In a recent opinion, the Sixth Circuit provided two illustrations to assist in determining whether a judge acted in "complete absence of all jurisdiction:"

> The line between the category of actions that protects Farris (acting in excess of jurisdiction) and the category that does not (acting in the complete absence of jurisdiction) is not self-revealing. Two illustrations come to mind. If a judge with

---

Thus, *Twin City Fire* does not establish an exception to the *Rooker-Feldman* doctrine for allegedly void state court orders.

> general criminal jurisdiction ruled that an act amounted to a crime when it did not, he would merely act in excess of jurisdiction and thus be immune from a § 1983 lawsuit challenging his decision. *Bradley*, 80 U.S. at 352; *see Stump v. Sparkman*, 435 U.S. 349, 357 n.7, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978). But if a probate judge assumed authority over a criminal case, the judge would act in the clear absence of jurisdiction because he is 'invested only with authority over wills and the settlement of estates of deceased persons.' *Bradley*, 80 U.S. at 352; *see Stump*, 435 U.S. at 357 n.7, 98 S. Ct. 1099.

*Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019). In deciding whether the exception applies, a court should "err on the side of granting immunity in close cases." *Id.*

Plaintiff argues judicial immunity does not apply to Judge Davenport's actions in this case because she lacked subject matter and personal jurisdiction to issue the *Ex Parte* Order. Plaintiff argues the Rutherford County Juvenile Court did not have jurisdiction to issue the order because she and A.C. reside in Williamson County. This claim, however, more clearly resembles the "excess of jurisdiction" example given by the court in *Norfleet*. As a juvenile court judge, Defendant Davenport had jurisdiction over proceedings involving "delinquent, unruly or dependent and neglected" children. Tenn. Code Ann. § 37-1-103(a)(1). The *Ex Parte* Order states it was issued in furtherance of the court's jurisdiction over a "dependent and neglected" child based on a report of harm to A.C. (Doc. No. 38-4, at 2). The Verified Application for the Order states that A.C. was living in Rutherford County at the time the alleged harm took place, and that the father resides in Smyrna [Rutherford County] Tennessee. (Doc. No. 38-6, at 5). That Plaintiff believes geographic jurisdiction for juvenile court matters is not governed by the location of the alleged harm, or where the child resided at the time of the abuse, does not establish that Defendant Davenport issued the Order in the "complete absence of all jurisdiction."

Plaintiff also argues the actions DCS was permitted to carry out through the *Ex Parte* Order, including the conducting of interviews and examinations of A.C., were not authorized by the state

statutes cited in the Order, Tennessee Code Annotated §§ 37-5-512(b) and 37-1-406(e). Assuming this is correct, however, such an error would merely suggest Defendant Davenport acted "in excess of jurisdiction," and not that she acted in the "complete absence of all jurisdiction."

Accordingly, even if the Court has subject matter jurisdiction of Plaintiff's claims, they are subject to dismissal because Defendant Davenport is entitled to judicial immunity for her actions relating to the issuance of the *Ex Parte* Order.[6]

## C. **Immunity for Prosecutors and Family Service Workers**

Defendants Wright and Gray argue they are entitled to immunity for their actions as advocates in the juvenile court. Defendant Wright is an attorney for DCS, and Defendant Gray is an investigator for DCS. (Doc. No. 38, at 2; Doc. No. 38-6, at 2). DCS is responsible for "receiving and investigating" reports of child abuse under Tennessee law. Tenn. Code Ann. § 37-1-406.

The Supreme Court has applied a "functional" approach in determining whether a government official is entitled to immunity by looking at the nature of the function performed. *Imbler v. Pachtman,* 424 U.S. 409, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976). Using this approach, the Court has extended to prosecutors absolute immunity from a suit for damages under Section 1983 when the activity involved is "intimately associated with the judicial phase of the criminal process." *Id.* 424 U.S. at 430. The prosecutor is not immune, however, for administrative duties or investigative functions that do not relate to the prosecutor's preparation for the initiation of prosecution. *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S. Ct. 2606, 2615, 125 L. Ed. 2d 209

---

[6] Multiple reviews of the Amended Complaint by the Court have not revealed any factual allegations involving actions by Defendant Davenport that extend beyond issuance of the *Ex Parte* Order. To the extent Plaintiff intended to raise such claims, she has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief.")

(1993). "A prosecutor was therefore absolutely immune from suit for soliciting false testimony from witnesses and participating in a probable cause hearing that led to the issuance of a search warrant, but not for giving legal advice to the police regarding the use of hypnosis as an investigative technique and the existence of probable cause to arrest." *Tunis,* 113 F.3d at 1445. For these latter type of actions, the prosecutor may only claim qualified immunity. *Id.; Burns v. Reed,* 500 U.S. 478, 111 S. Ct. 1934, 1943-44, 114 L. Ed. 2d 547 (1991).

Social workers (or family service workers) are entitled to immunity "akin to the scope of prosecutorial immunity." *Pittman v. Cuyahoga Co. Dept. of Children & Family Services,* 640 F.3d 716, 724 (6th Cir. 2011) (quoting *Imbler*, 424 U.S. at 430). This immunity applies "only when [social workers] are acting in their capacity as *legal advocates* – initiating court actions or testifying under oath – not when they are performing administrative, investigative, or other functions." *Id.* (emphasis in original). For example, family service workers are absolutely immune for their actions in filing a juvenile abuse petition that initiates child abuse proceedings, and for giving testimony or making recommendations in court concerning the child's best interests. *Pittman*, 640 F.3d at 725. This immunity also extends to the "'fail[ure] to conduct a careful investigation before incorporating . . . false accusations in [a child abuse] petition.'" *Id.,* at 726 (quoting *Rippy ex rel. Rippy v. Hattaway,* 270 F.3d 416, 421 (6th Cir. 2001)). The function of making recommendations to the juvenile court "'*including the underlying investigation,* is . . . intimately related to the judicial phase of child custody proceedings' and therefore protected by absolute immunity." *Id.* (emphasis in original). Conferring absolute immunity on child advocates "represents 'a balance between ... evils,' as 'it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty

to the constant dread of retaliation.'" *Bauch v. Richland Cty. Children Servs.,* 733 Fed. Appx. 292, 297 (2018) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)).

Plaintiff alleges Defendants Wright and Gray conducted an inadequate investigation and made false statements in their Verified Application for the *Ex Parte* Order, and in drafting the Order. Applying the "functional" approach, this is precisely the conduct the Sixth Circuit has held to be protected by absolute immunity.

Citing *Rouse v. Stacy,* 478 Fed. Appx. 945, 952 (6th Cir. 2012), Plaintiff argues immunity does not apply here because the defendants were acting without jurisdiction, based on the same state law arguments outlined above with regard to judicial immunity. In *Rouse,* the Sixth Circuit held absolute immunity did not apply to a claim the prosecutor used the threat of repeated beatings to persuade the plaintiff to plead guilty. *Id.* In reaching its decision, the court pointed out that absolute immunity does not apply to "'acts that are manifestly or palpably beyond [the defendant's] authority . . . or performed in the clear absence of all jurisdiction.'" *Id.* As with Defendant Davenport, however, any errors these defendants made about geographic jurisdiction or their authority to require A.C. to be interviewed or examined were not "in the clear absence of all jurisdiction," nor was the defendants' conduct "manifestly or palpably" beyond their authority. The defendants were acting in their capacity as legal advocates in connection with an investigation of a report of abuse involving A.C. Thus, Defendants Wright and Gray are absolutely immune with regard to Plaintiff's claims based on their role in obtaining the *Ex Parte* Order.

To the extent Plaintiff bases a claim against these defendants on "execution" of the *Ex Parte* Order, the immunity analysis requires different considerations. The Sixth Circuit recently held, in *Brent v. Wayne Co. Dept. of Human Services,* 901 F.3d 656, 685 (6th Cir. 2018), that "a social worker, like a police officer, cannot *execute* a removal order that would not have been issued

15

but for known falsities that the social worker provided to the court to secure the order." In those circumstances, the court explained, absolute immunity does not apply. *Id.* The court went to find the defendant was entitled to qualified immunity, however, because the constitutional claim sought to be applied was not "clearly established" at the time the defendant executed the order. *Id.*

Assuming the Amended Complaint adequately alleges the defendants executed the *Ex Parte* Order when they knew it was based on false statements, the Court must determine whether the defendants are entitled to qualified immunity. To determine whether qualified immunity applies, a court is to consider two inquiries: "(1) did the government actors violate a constitutional right; and (2) was that right clearly established at the time the alleged violation occurred?" *King v. Montgomery Co., Tenn.,* ___ Fed. Appx. ___ , 2020 WL 41908 (6th Cir. 2020); *see also Baynes v. Cleland,* 799 F.3d 600, 609-10 (6th Cir. 2015). If the answer to either of these questions is negative, qualified immunity applies. *Id.* The inquiries need not be considered sequentially. *Id.*

Although Plaintiff cites *Brent* in arguing the defendants violated her constitutional rights through execution of the *Ex Parte* Order, she does not address the question of whether the right was "clearly established" at the time the violation occurred. As the *Brent* Court recognized, the Sixth Circuit held "as recently as 2015 that 'general assertions that "the Fourth Amendment was violated as to [a child] when he was seized pursuant to [an] order" that he claims "was based on false statements and otherwise lacked probable cause" invoke no clearly established right.'" 901 F.3d at 685 (citing *Barber v. Miller,* 809 F.3d 840, 848 (6th Cir. 2015)). Other than the decision in *Brent,* Plaintiff has not cited authority indicating that the "contours" of the constitutional right she invokes was "sufficiently clear such that a reasonable [family service worker] would have fair warning" the alleged conduct was unconstitutional. *Baynes,* 799 F.3d at 616 (footnote omitted).

Therefore, the defendants are entitled to qualified immunity regarding Plaintiff's "execution" claims.

Accordingly, even if the Court has subject matter jurisdiction of Plaintiff's claims, they are subject to dismissal because Defendants Wright and Gray are entitled to immunity for their alleged actions.

## IV. Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss are granted.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR
UNITED STATES DISTRICT JUDGE